UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
GUY PATTERSON,

                Petitioner,

   -against-

STATE OF NEW YORK,

                Respondent.
-------------------------------------------------------------------- X

08-CV-5000 (ARR)

NOT FOR PRINT OR ELECTRONIC PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

Petitioner brings the instant action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his March 2, 2006 conviction in the Supreme Court of the State of New York, Queens County, following a jury trial, of Grand Larceny in the Fourth Degree, Criminal Possession of Stolen Property in the Fifth Degree, Jostling, Criminal Mischief in the Fourth Degree, and Possession of Burglar's Tools. Petitioner was sentenced, as a second felony offender, to an indeterminate prison term of two to four years on the grand larceny count, and concurrent, definite jail terms of one year on each of the remaining counts. Petitioner has been released from prison and is currently under parole supervision. Petitioner raises a number of claims in his amended petition, which are described below. For the reasons that follow, the petition is denied.

## BACKGROUND

A. <u>Petitioner's Pre-Trial Hearing, Trial, Conviction, and Sentencing</u>

At approximately 12:02 am on July 2, 2005, plainclothes Police Officer Daniel Fahey was on a stationary subway train at Ditmars Boulevard in Queens, New York. (Hr'g Tr. at 5-7.)

The officer observed a sleeping passenger on a train that had entered the station on the opposite platform. (Hr'g Tr. at 6-7, 10.) The officer also observed another man, identified as petitioner, slide over to the sleeping passenger and pat down the passenger's pockets. (Hr'g Tr. at 7.) Petitioner then took a razor blade and made slashes to the passenger's rear right pocket, and removed a black wallet. (Hr'g Tr. at 7.) Petitioner put the wallet into a knapsack and exited the train. (Hr'g Tr. at 8-9.) The officer immediately arrested petitioner on the subway platform and recited Miranda warnings to him. (Hr'g Tr. at 9.) The officer searched petitioner's knapsack and recovered a black leather wallet and a razor blade. (Hr'g Tr. at 10.) The wallet contained $51.00 in cash, a Metrocard, and personal documents bearing the name of the passenger, Jose Lavin. (Hr'g Tr. at 10.) Fahey and his partner awakened Lavin, stated what happened and asked him if he was missing anything. (Hr'g Tr. at 10.) Lavin stated he was missing his wallet, and identified the recovered wallet as belonging to him. (Hr'g Tr. at 10.)

Fahey took petitioner to the police precinct for processing petitioner's arrest and vouchering the evidence. (Hr'g Tr. at 10.) During this time, the officers did not have a conversation with petitioner, nor did they ask him any questions. (Hr'g Tr. at 18.) While Officer Fahey was putting the black wallet into an evidence bag, petitioner stated that he hadn't had a chance to look in the wallet and wanted to know how much was in it. (Hr'g Tr. at 11, 18.)

Based upon officer Fahey's testimony at petitioner's pre-trial hearing describing the facts above, the court held that there was probable cause to make an arrest, and that the seizure of the items in the knapsack were seized pursuant to a lawful arrest. (Hr'g Tr. at 22.) The court further held that petitioner's statement, as testified to by the officer, was spontaneous in nature and there was no indicating that he was being interrogated. (Hr'g Tr. at 22-23.) Thus, the court denied petitioner's motion to suppress the physical evidence recovered from him and his motion to

suppress the statements he made to the police. (Hr'g Tr. at 23.)

On January 31, 2006, petitioner proceeding to trial. After both sides rested, the court dismissed the charge in the indictment of possession of a dangerous instrument. (Tr. at 232.) Following summations, the court charged the jury on the remaining counts, including the first count of grand larceny in the fourth degree. (Tr. at 264.) On February 2, 2006, a jury convicted petitioner of Grand Larceny in the Fourth Degree, Penal Law § 155.30(5), Criminal Possession of Stolen Property in the Fifth Degree, Penal Law § 165.40, Jostling, Penal Law § 165.25(1), Criminal Mischief in the Fourth Degree, Penal Law § 145.00(1), and Possession of Burglar's Tools, Penal Law § 140.35. (Verdict Tr. at 275-79.) On March 2, 2006, petitioner was adjudicated a second felony offender and was sentenced to an indeterminate prison term of two to four years on the grand larceny count, and concurrent, definite jail terms of one year for each of the remaining counts. (Sentencing Tr. at 2-9.)

B. Petitioner's Direct Appeal

On direct appeal, petitioner, through counsel, argued that: (1) the trial court did not charge the jury on the appropriate section of the Grand Larceny statute; (2) the trial court improperly admitted petitioner's statement to the police officers and did not instruct the jury that it could evaluate the voluntariness of the statement; (3) the trial court improperly permitted a police witness to testify that, in his opinion, razor blades are used in the commission of larcenies; (4) he was denied effective assistance of trial counsel because of his attorney's failure to (a) object to the trial court's instruction on the grand larceny count and (b) object to the trial court's failure to instruct the jury on the issue of voluntariness of petitioner's statement to the police. (Decl. in Opp., Ex. A.)

On February 5, 2008, the Appellate Division, Second Department, affirmed the judgment of conviction. People v. Patterson, 48 A.D.3d 487 (2d Dep't 2008). The court held that petitioner's statement was admissible based on the record and not the product of interrogation. Id. Additionally, the court found that petitioner was "afforded the effective assistance of trial counsel." Id. The Appellate Division finally held that petitioner's "remaining contentions [were] unpreserved for appellate review and, in any event, [were] without merit." Id.

Petitioner, through counsel, sought leave to appeal the decision of the Appellate Division to the New York Court of Appeals. (Decl. in Opp., Ex. D.) By certificate dated May 8, 2008, the New York Court of Appeals denied petitioner's leave application. People v. Patterson, 10 N.Y.3d 868 (2008).

C. The Current Petition

Petitioner filed his pro se habeas petition on November 10, 2008 in the Southern District of New York. (Dkt. No. 1.) The petition was subsequently transferred to this district, and petitioner's motion to amend his habeas petition was granted. On April 3, 2009, petitioner filed an amended habeas petition, claiming that: (1) petitioner's statement to the police should have been excluded from the evidence; (2) the grand jury proceedings were defective because the prosecutor failed to submit the charge of petit larceny as a lesser included offense; (3) the evidence was not legally sufficient to support a conviction for grand larceny; (4) the trial court gave an incorrect jury charge on the fourth-degree larceny count; (5) the trial court improperly failed to instruct the jury on the crime of petit larceny as a lesser included offense of fourth-degree grand larceny; (6) the statutory provision defining the crime of jostling was unconstitutionally vague; and (7) petitioner's rights under the Double Jeopardy Clause of the

Fifth Amendment were violated. (Amended Pet., Dkt. No. 15.) Petitioner also claims that he was denied effective assistance of counsel because his trial counsel (a) failed to object to the trial court's improper instructions on the grand larceny count; (b) pursued a flawed strategy; (c) failed to challenge the constitutionality of the jostling statute; (d) failed to meet with petitioner in preparation for trial; (e) failed to preserve issues for appeal; and (f) failed to submit motions to the court. (Amended Pet., Dkt. No. 15.) Respondent concedes that petitioner's amended petition is timely.

## DISCUSSION

A. Exhaustion Requirements

It is well settled that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus. Picard v. Connor, 404 U.S. 270, 275 (1971); see also Duncan v. Henry, 513 U.S. 364, 366-67 (1995). A petitioner is deemed to have exhausted state judicial remedies when the issue has been "fairly presented to the state courts" or the petitioner has given the state courts an "initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard, 404 U.S. at 275. "In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." Daye v. Attorney General of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982). The state court will have notice of the constitutional nature of a claim based on "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a

specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Id. at 194 (citations omitted).

In this case, petitioner has only exhausted a fraction of his claims. Petitioner on direct appeal argued that the statement petitioner gave to the police was improperly admitted into evidence.[1] (Decl. in Opp., Ex. A at 11-12.) Additionally, petitioner raised an ineffective assistance of counsel claim on direct appeal, arguing that his attorney failed to object to the trial court's jury charge on the grand larceny count. (Decl. in Opp., Ex. A at 24.) Petitioner sought leave to appeal to the New York Court of Appeals, and was denied. (Decl. in Opp., Ex. F.) As a result, petitioner has exhausted these two claims, and the merits of these claims are discussed below.

While petitioner did argue on direct appeal that the trial court improperly charged the jury on the grand larceny count, his claim was based entirely on state law and New York State Pattern Jury Instructions. (Decl. in Opp., Ex. A at 7.) Petitioner did not assert this claim as a federal constitutional claim or call to mind such a claim, nor did he rely on state cases employing constitutional analysis. Accordingly, this claim as raised in his amended habeas petition is unexhausted. Daye, 696 F.2d at 192. Additionally, petitioner did not raise the remaining grounds of his ineffective assistance of counsel claim either on direct appeal or in a motion to vacate the judgment.[2]

Petitioner's additional habeas claims – his challenge to the grand jury proceedings, his challenge to the legal sufficiency of the evidence supporting a grand larceny conviction, his

---

[1] Respondent argues that petitioner argues for the first time in his habeas petition that his statement should have been excluded at trial. However, by challenging the voluntariness of the statement and citing Miranda, I find that petitioner raised a constitutional claim such that the claim is exhausted.
[2] Petitioner on direct appeal did raise an ineffective assistance of counsel claim based on trial counsel's failure to object to the court's failure to charge the jury on the voluntariness of the defendant's statement. (Decl. in Opp., Ex. A at 24.) However, this claim does not appear in petitioner's amended habeas petition.

argument that the trial court failed to charge a lesser included count, his challenge to the constitutionality of the jostling statute, his double jeopardy claim, and his ineffective assistance of counsel claims based on counsel's alleged failure to challenge the constitutionality of the jostling statute, failure to preserve issues for appeal, and failure to submit motions to the court – were neither asserted on direct appeal nor in a motion to vacate the judgment. Accordingly, these claims were never presented to the state court, and are not exhausted. Daye, 696 F.2d at 191.

For exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (citing Harris v. Reed, 489 U.S. 255, 263 n. 9 (1989)). With the exception of petitioner's ineffective assistance of counsel claim that trial counsel was ineffective for pursuing a flawed strategy, petitioner's unexhausted claims are procedurally barred because he can no longer raise them in a state forum. Petitioner cannot again seek leave to appeal these claims in the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. Grey, 933 F.2d at 120; see also N.Y.Court Rules § 500.10(a). Additionally, petitioner cannot raise these claims in a motion to vacate pursuant to CPL § 440 because these claims arise from matters on the record. N.Y.Crim.Proc.Law § 440.10(2)(c) (barring review if a claim could have been raised on direct review).

Because petitioner no longer has "remedies available" in the New York state courts under 28 U.S.C. § 2254(b), his claims are procedurally barred from review absent a showing of cause for the procedural default and resulting prejudice, or that the failure to consider the claims will result in a "fundamental miscarriage of justice." Murray v. Carrier, 477 U.S. 478, 492, 496

7

(1986); Wainwright v. Sykes, 433 U.S. 72, 87-91, 97 S.Ct. 2497, 2506-2509, 53 L.Ed.2d 594 (1977). Petitioner makes no showing of cause or prejudice relating to his unexhausted claims. Nor has petitioner identified a "fundamental miscarriage of justice" that would result from dismissing his claims prior to reaching the merits. Accordingly, petitioner's challenge to the grand jury proceedings,[3] his challenge to the legal sufficiency of the evidence supporting a grand larceny conviction, his argument that the trial court failed to charge a lesser included count, his challenge to the constitutionality of the jostling statute, his double jeopardy claim, and his ineffective assistance of counsel claims based on counsel's alleged failure to challenge the constitutionality of the jostling statute, failure to preserve issues for appeal, and failure to submit motions to the court are dismissed without reaching the merits.

Petitioner's unexhausted claims that he was denied effective assistance of counsel due to trial counsel's flawed strategy and counsel's alleged failure to meet with petitioner in preparation for trial, are not procedurally barred. Because these claims are based on matters that do not appear on the record, they can be raised in a motion to vacate pursuant to CPL § 440.10. Quinones v. Miller, 2003 WL 21276429, at *21 (S.D.N.Y. 2003) (finding that when claims are based on matters outside the record, and not reviewable on direct appeal, New York law requires that they "be pursued by way of a CPL § 440.10 motion") (internal citations omitted). Review pursuant to § 440.10 is available "[a]t any time after the entry of judgment," and petitioner's ineffective assistance claims based on these two allegations, though unexhausted, are therefore

---

[3] Specifically, petitioner alleges that the prosecutor improperly failed to instruct the grand jury on the crime of petit larceny as a lesser included offense of fourth degree grand larceny. While this claim is not directly evident from the trial record, petitioner was in a position to bring this claim before the Appellate Division on direct appeal. Regardless, even if I were to hold that the claim is not procedurally barred, I would dismiss the claim on the merits. The law is well settled that there is no federal constitutional right to indictment by a grand jury in a state criminal prosecution. See Alexander v. Louisiana, 405 U.S. 625, 633, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury."). Accordingly, this claim is not cognizable on habeas review.

not procedurally barred in state court. <u>Andrews v. Downstate Correctional Facility</u>, 2009 WL 3587280, at * 3 (E.D.N.Y. 2009).

The current petition, therefore, presents both exhausted and unexhausted claims. When faced with such a petition, courts may (1) dismiss the petition; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims; or (3) deny the petition on the merits pursuant to § 2254(b)(2) notwithstanding the failure of the petitioner to exhaust remedies. <u>Rhines v. Webber</u>, 544 U.S. 269, 277 (2005); 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The Supreme Court in <u>Rhines</u> cautioned that the "stay and abeyance" option should be "available only in limited circumstances." <u>Id.</u> The Court stated that "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." <u>Id.</u> In this case, petitioner has not sought a stay of his petition, nor can I find "good cause" for his failure to exhaust these remaining ineffective assistance of counsel claims before the state courts. Accordingly, as discussed in detail below, I dismiss these two claim as meritless despite petitioner's failure to exhaust.

B. <u>Standard of Review</u>

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that, although "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

C. <u>The Trial Court Did Not Contravene or Unreasonably Apply Clearly Established Federal Law in Admitting Petitioner's Statement</u>

In his first exhausted claim, petitioner argues that the statement he made to the officer at

the time his arrest was being processed should have been excluded at trial. Petitioner claims that his question to the officer about how much money was in the wallet because he did not have a chance to look in it should have been excluded because petitioner was seeking information in order to determine what charges would be filed and in order to prepare for trial. (Amended Pet. at 32.) Petitioner also argues that because he did not have an attorney present, the statement should not have been admitted. (Amended Pet. at 32.)

The Supreme Court has clarified that the "goals of the Miranda safeguards could be effectuated if those safeguards extended not only to express questioning, but also to 'its functional equivalent.'" Pennsylvania v. Muniz, 496 U.S. 582, 600-01 (1990) (quoting Arizona v. Mauro, 481 U.S. 520, 526 (1987)). In Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980), the Court defined the phrase "functional equivalent" of express questioning to include "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." However, voluntary or spontaneous statements, which do not result from "official interrogation," have never been subject to the bounds of Miranda. Miranda v. Arizona, 384 U.S. 436, 478 (1966); see also Wolfrath v. LaVallee, 576 F.2d 965, 973 n.6 (2d Cir. 1978), cert. denied, 439 U.S. 933 (1978).

At the pre-trial hearing, the court ruled that "the statement of the actual query made by defendant, as testified to by the police officer, was spontaneous in nature and there was nothing indicating that he was being interrogated or that there was any conduct on the part of the officer that was conduct intending to elicit this response from the defendant . . . ." (Hearing Tr. at 22-23.) The Appellate Division found that the evidence at the suppression hearing supports a finding that "the defendant's statement was spontaneous and not the product of interrogation or

its functional equivalent." People v. Patterson, 48 A.D.3d at 487. The record does not reflect otherwise. Based on the testimony of the officer, neither Officer Fahey nor his partner were having a conversation with petitioner or asking him questions at the time petitioner asked the question. (Hr'g Tr. at 18.) Thus, the statement was voluntary and spontaneous.

Additionally, in his amended petition, petitioner does not seem to contest the voluntariness of the question, but instead argues that the question was made so that he could understand the charges being brought against him adequately prepare for trial. (Amended Pet. at 32.) As the respondent notes, however, such a rationale for asking the question does not speak to the voluntariness of the query for admissibility purposes. Accordingly, I find that the state court did not contravene or unreasonably apply clearly established federal law in admitting petitioner's statement.

### D. Petitioner's Ineffective Assistance of Counsel Claims

Petitioner raises a number of ineffective assistance of counsel claims, but, for reasons explained above, only petitioner's exhausted claim of ineffective assistance based on trial counsel's failure to object to the grand larceny charge, and petitioner's unexhausted but not procedurally barred claims that trail counsel pursued a flawed strategy and failed to meet with petitioner are examined below.

#### 1. *Standard of Review*

In order to demonstrate ineffective assistance of counsel, the petitioner must satisfy the two prong test established in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner must demonstrate, first, that counsel's performance fell below "an objective standard

of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 698. A court need not decide both prongs of the Strickland test for ineffective assistance of counsel if a party has made an insufficient showing on one. See Id. at 697.

In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy. See Strickland, 466 U.S. at 689. However, failure to pursue a particular course of action is not considered strategic when it is not a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." See Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001).

2. *Trial Counsel Failure to Object to the Trial Court's Jury Charge on the Grand Larceny Count Does Not Amount to Ineffective Assistance*

On direct appeal, petitioner argued that trial counsel failed to object to the trial court's jury instruction on the grand larceny count, a claim he raises in his amended habeas petition. The Appellate Division rejected petitioner's claim, finding that he was "afforded the effective assistance of trial counsel." People v. Patterson, 48 A.D.3d at 487. Specifically, petitioner claims that the trial court's jury instruction contained an incorrect statement of the elements of

13

grand larceny on the fourth degree. Petitioner argues that the trial court told the jury that to find petitioner guilty of grand larceny in the fourth degree, the evidence had to show that petitioner "wrongfully took property from its owner," without specifying that the State had to show beyond a reasonable doubt that petitioner had taken property "from the person" of another, as defined by New York Penal Law § 155.30(5).

While delivering jury instructions, the trial court stated that "[t]he first charge I am submitting to you is grand larceny in the fourth degree. It reads in pertinent part the defendant on or about July 2, 2005 in the County of Queens stole certain property . . . *from the person* of Jose Lavin." (Jury Charge Tr. at 264) (emphasis added). When stating the requirements of the offense, the court stated that "the People are required to prove from all the evidence in the case beyond a reasonable double the following: That on or about July 2, 2005, the defendant [G]uy Patterson wrongfully took property from its owner Jose Lavin . . . ." (Jury Charge Tr. at 265.) While an objection by counsel might have clarified that "from its owner Jose Lavin" specifically meant "from the person" of Jose Lavin, in light of both the court's initial explanation of the charge using the phrase "from the person," and the evidence that the wallet was in fact taken from Lavin's person, trial counsel's failure to make such an objection cannot be found to constitute deficient performance. Furthermore, even if the failure to object to the charge fell below an objective standard of reasonableness, it is unlikely that petitioner was prejudiced by such a failure to object. The State's case relied heavily on eyewitness testimony from the officer stating that petitioner had cut open the passenger's rear pocket and taken his wallet. Thus, there is no reasonable probability that the clarification in the jury instruction would have led to a different result on the grand larceny count.

Accordingly, I find that the state court did not contravene or unreasonably apply clearly

14

established federal law in denying petitioner's claim of ineffective assistance of counsel due to trial counsel's failure to object to the grand larceny charge.

### 3. *Petitioner's Claim that Trial Counsel Pursued a Flawed Strategy Lacks Merit*

Petitioner argues that counsel "failed to establish a well prepared defense throughout," and "did not fashion any plausible defense." (Amended Pet. at 15-16.) Though unexhausted, I find that petitioner's claim is without merit. 28 U.S.C. § 2254(b)(2). Viewing the record as a whole, petitioner has failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Counsel filed pre-trial motions, including challenging probable cause for petitioner's arrest, and moved to suppress the physical evidence and statement made by petitioner during arrest processing. (Hr'g Tr. 22.) Trial counsel sought to limit admissibility of defendant's prior convictions at the court's Sandoval hearing, (Tr. at 7), and took an active role during voir dire. (Tr. at 82-93; 124-33.) Counsel made a coherent opening statement (Tr. at 153-55), and attacked the officer's recollection and credibility on cross-examination (Tr. at 182-99). On counsel's motion, the court dismissed court three of the indictment, possession of a dangerous instrument (Tr. at 232). Finally, on summation, trial counsel argued that the officers "were not in a position to see what they told you they saw on July 2 . . . ." (Tr. at 240.) Though ultimately unsuccessful, the record as a whole does not show that trial counsel's strategy of attacking the credibility of the witnessing officers was constitutionally deficient. Accordingly, this claim is denied.

### 4. *Petitioner's Claim that Trial Counsel Was Ineffective For Failure to Meet With Him Lacks Merit*

Petitioner alleges that counsel failed to inform him of motions made, that petitioner had to question counsel in order to communicate with him, and that trial counsel failed to visit him in jail, resulting in the lack of a bill of particulars or motions on discovery material. (Amended Pet. at 17-18.) "Adequate consultation between counsel and client is essential to the competent representation of a criminal defendant." Jelinek v. Costello, 247 F.Supp.2d 212, 272-73 (E.D.N.Y. 2003). "When counsel's failure to consult with a criminal defendant materially hampers the fashioning of a defense, counsel may be deemed to have functioned below the constitutional standard." Id. (citing Lindstadt v. Keane, 239 F.3d 191, 200 (2d Cir. 2001) (counsel deemed ineffective, in part, for failing to elicit from his client alibi information contradicting the state's contention that he could have abused his daughter at the times or in the places alleged)).

Here, there is no evidence that trial counsel's alleged failures hampered the fashioning of the defense in any regard. As discussed above, trial counsel filed relevant pre-trial motions and adequately represented petitioner at the pre-trial hearing. Trial counsel also confirmed receipt of witness lists and Rosario material from the government. (Tr. at 13.) Petitioner does not indicate what additional meetings between himself and trial counsel would have uncovered in the way of evidence, alibi witnesses, or contradictory testimony that would have altered the result of the proceedings. Petitioner has thus failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Accordingly, though unexhausted, I find that petitioner's claim is without merit. 28 U.S.C. § 2254(b)(2).

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

/S/
Allyne R. Ross
United States District Judge

Dated: April 9, 2010
Brooklyn, New York

## Service List

<u>Petitioner (Pro Se):</u>
Guy Petterson
c/o The Peter Jay Sharp Center for Opportunity
The Doe Fund, Inc.
89-111 Porter Avenue
Brooklyn, NY 11237

<u>Respondent:</u>
Priscilla Steward
Assistant Attorney General
120 Broadway
New York, NY 10271